THE MERCHANTS' DESPATCH TRANSPORTATION COMPANY

*v.*

FREDERICK FURTHMANN.

*Filed at Ottawa October 26, 1893.*

1. CARRIERS—*limitations of liability by bill of lading not assented to.* Where goods are shipped under a verbal agreement, before any written contract or bill of lading has been tendered to the shipper, the subsequent acceptance of a bill of lading without assenting to its conditions will not conclude the shipper and defeat his right of action for a loss.

2. SAME—*giving bill of lading after shipment, and its effect.* Where a verbal agreement for the transportation of goods is made, and such

agreement is acted on, and the shipper has parted with all control over the goods, and the carrier afterward gives the shipper a bill of lading containing restrictions of the carrier's liability, if the shipper expressly assents to the terms of the bill such assent will operate as a change of the terms of the original contract, but the mere receipt of the bill of lading by the owner will not conclude him from showing what the actual agreement was, under which the goods were shipped.

3. SAME—*receipt not a contract of shipment.* On May 4 a carrier gave the shipper of goods a receipt describing the goods and the destination marked thereon. The receipt contained the words, "Subject to the conditions on the back of this receipt." On the second day thereafter, and while the goods were *en route,* the carrier gave the shipper a bill of lading contracting to forward the goods upon conditions thereunder written: *Held,* that the paper delivered to the shipper on May 4 was in no sense a contract of shipment.

4. SAME—*receipt referring to a notice on the back thereof—bills of lading.* A receipt for goods by a carrier, upon the back of which is an unsigned notice intended to restrict the carrier's liability, is not a contract of shipment binding on the shipper. Bills of lading are both receipts and contracts to carry. So far as they acknowledge the delivery and acceptance of the goods they are mere receipts, and as to the rest they are contracts.

5. CONTRACT—*lex loci.* Where a contract of carriage is entered into in the State of New York, the laws of that State will control as to its nature, interpretation and effect.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. GEORGE H. KETTELLE, Judge, presiding.

Messrs. W. H. & J. H. MOORE & PURCELL, for the appellant:

The contract of shipment having been made in New York, the law of that State must control as to its nature, interpretation and effect. *Railroad Co.* v. *Boyd,* 91 Ill. 271; *Pennsylvania Co.* v. *Fairchild,* 69 id. 261; *Railroad Co.* v. *Smith,* 74 id. 197.

All prior verbal negotiations and agreements are merged in such receipt, which was the contract of the parties.

That the burden of proving negligence in such case is upon the shipper, and not upon the carrier, see *Lamb* v. *Railroad Co.* 46 N. Y. 277; *Cochran* v. *Dinsmore,* 49 id. 249; *Long* v.

68   Merchants' Despatch Trans. Co. *v.* Furthmann.

Brief for the Appellee.   Opinion of the Court.

*Railroad Co.* 50 id. 76; *Belger* v. *Dinsmore,* 51 id. 166; *Maguire* v. *Dinsmore,* 56 id. 168; *Steers* v. *Insurance Co.* 57 id. 1; *Kirkland* v. *Dinsmore,* 62 id. 171; *Maynard* v. *Railroad Co.* 71 id. 180; *Insurance Co.* v. *Railroad Co.* 72 id. 90; *Collander* v. *Dinsmore,* 55 id. 200.

The court erred in refusing to admit in evidence the conditions of the receipt. The receipt was given to Oelsner's truckman at the time of the shipment, and accepted by him without objection. The conditions were a part of the contract.

The court erred in admitting evidence of an alleged oral agreement which was in conflict with the written contract, and alleged to have been made prior to the written contract entered into at the time of the shipment.

Not only did the court refuse to admit the conditions of the receipt in evidence, but, against defendant's objection, allowed evidence to go to the jury tending to show that Oelsner, the shipper, prior to the shipment and prior to the acceptance of the receipt, made an oral agreement with the defendant which was different from the contract made by the receipt. That this evidence was improperly admitted is shown by *Long* v. *Railroad Co.* 50 N. Y. 76; *Insurance Co.* v. *Railroad Co.* 72 id. 90; *Collander* v. *Dinsmore,* 55 id. 200.

Mr. Edmund Fürthmann, and Mr. William M. Johnson, for the appellee, cited the following authorities: *Bostwick* v. *Railroad Co.* 45 N. Y. 712; *Swift* v. *Steamship Co.* 106 id. 206; *Heyl* v. *Steamship Co.* 14 Hun, 564; *Edsall* v. *Railroad Co.* 50 N. Y. 661; *Maguire* v. *Dinsmore,* 56 id. 168; *Tierney* v. *Railroad Co.* 76 id. 305; *Railroad Co.* v. *Boyd,* 91 Ill. 271.

Mr. Justice Wilkin delivered the opinion of the Court:

Appellee sued appellant in the Superior Court of Cook county, to recover the value of certain beer alleged to have been shipped by him over its line from New York to Chicago, which was spoiled and lost to the plaintiff while *en route.* The

trial resulted in a judgment for plaintiff for $299 and costs of suit.    This is an appeal from a judgment of affirmance in the Appellate Court.

For the purposes of this decision the following facts are accepted as established by the judgment below:    On the 4th day of May, 1889, Rudolph Oelsner, of New York, sent by one of his truckmen, to the defendant's freight depot in that city, the beer in question.    The truckman received and returned to Oelsner the following receipt:

---

FOR INFORMATION AND BILLS OF LADING APPLY AT OFFICE, 335 BROADWAY.

New York, *May 4, 1889.*

Received from *Rudolph Oelsner,* No. *40 Reade* St., in apparent good order, (except as noted,) the following PACKAGES, (contents unknown,) marked as in the margin, subject to the conditions on the back of this receipt:

| MARKED | 20    $\left\{\begin{array}{l} N.\ Y.\ C.\ \&\ H.\ R.\ R.\ R. \\ May\ 4,\ 1859. \\ \cdot\ St.\ John's\ Park. \end{array}\right\}$ |
|---|---|
| *F. Furthmann,* | *Twenty half bbls. Beer.* |
| *169 N. Clark St.,* | *Bill of Lading given at 335* |
| *Chicago, Ill.* | *Broadway, N. Y., May 6, 1889.* |
| Charges $....... *Owner's risk.* | *Hurd.* |

☞ *Read the conditions on the back of this Receipt.*    *C.*

---

On the back it was stated, "The within mentioned goods to be forwarded under the following conditions."    Then follow a number of conditions.    On the 6th of May Oelsner received from the company a bill of lading, as follows:

"New York, *May 4, 1889.*

"Received from Rudolph Oelsner, 40 Reade St., in apparent good order, (except as noted,) the following packages, (contents and value unknown,) marked as in the margin, viz. :  ·

20          *Twenty half bbls. Beer,*
                    *Owner's risk.*
          *Original B./L. given May 6/89.*

To be forwarded to Chicago, Ill.  ·

          (UNDER THE FOLLOWING CONDITIONS.)"

Then follow conditions in the body of the bill of lading, the same as appear on the back of the receipt, one or more of which, it may be conceded, would exempt the carrier from liability for the loss sued for, if binding on the plaintiff. This bill of lading was duly signed.

The evidence upon the trial tended to prove, and hence the verdict of the jury and judgment of affirmance by the Appellate Court has conclusively established the fact, "that prior to the reception of the goods the carrier agreed with the shipper to transport them in 'cold service,' and before any bill of lading was made, had shipped the goods." The contract of carriage having been entered into there, the laws of New York will control as to its nature, interpretation and effect. Authorities need not be cited in support of this proposition.

It was said in *Kirkland* v. *Dinsmore*, 62 N. Y. 171: "It has been repeatedly adjudged in this State the acceptance by the shipper, on the delivery of the goods for transportation to the carrier, of a receipt or bill of lading signed by the carrier, expressing the terms and conditions upon which they are received and are to be carried, constitutes, in the absence of fraud or imposition, a contract controlling the rights of the parties." The general rule thus stated has, so far as we know, been uniformly adhered to by the courts of that State.

It was, however, decided in the case of *Bostwick* v. *Baltimore and Ohio Railroad Co.* 45 N. Y. 712, that where goods were shipped under a verbal agreement, before any written contract or bill of lading had been tendered to the plaintiff, the subsequent acceptance of a bill of lading without assenting to its conditions would not conclude the shipper. It was there said: "There was no contradiction attempted of the evidence of the plaintiff that he made a verbal contract with Cooke for the transportation of the fifty-four bales through to New York by 'all rail,' and agreed to pay the all-rail rate. The goods were shipped under this verbal agreement before any written contract or bill of lading had been tendered to the

plaintiff. The verbal agreement had been acted upon, and under it the plaintiff had parted with all control over his goods. The rule that prior negotiations are merged in a subsequently written contract does not apply to such a case as this. * * * If the plaintiff had expressly assented to the terms of the bill of lading subsequently delivered to him, such assent would operate as a change of the terms of the contract originally made, and under which he had parted with his property. But after the verbal agreement had been consummated and rights had accrued under it, the mere receipt of the bill of lading, inadvertently omitting to examine the printed conditions, was not sufficient to conclude the plaintiff from showing what the actual agreement was under which the goods had been shipped." The doctrine is recognized in *Germania Fire Ins. Co. et al.* v. *M. & C. R. R. Co.* 72 N. Y. 90. See, also, *Swift et al.* v. *Pacific Mail Steamship Co. et al.* 106 N. Y. 206.

The scope of the latter decision on this point is accurately stated in the syllabus, as follows: "The parties made a special contract as to the transportation of the oil. Two months after its delivery at Panama, the common agent of the defendants here executed bills of lading, which were sent to plaintiffs, but were not received until after the oil had left Aspinwall. The contract, as set forth in the bills, was different from that actually made: *Held*, that defendants could not alter or abrogate the contract actually made, by issuing bills of lading, and in the absence of proof establishing that plaintiff consented to accept the bills in place of the prior contract, the latter must control."

Leaving out of consideration, then, the receipt of May 4, the rights of the parties would clearly be controlled by the above mentioned verbal agreement. But counsel for appellant contend, that that receipt, with its conditions, became the contract of the parties at its date, when the goods were delivered, and continued to be the contract until May 6, when

the bill of lading was delivered, during which time the goods were *en route*, and therefore the doctrine of the *Bostwick case* has no application. Upon the facts of the case we are clearly of the opinion that the paper delivered by the carrier to the shipper on May 4 was in no sense a contract of shipment. If, as is contended, the receipt of May 4 and the bill of lading of the 6th are identical in their legal effect, and the former was intended by the parties as a contract of shipment, the question naturally arises, why was the bill of lading made? If the parties intended the receipt to be the contract of shipment, with the same conditions as the bill of lading afterwards delivered to the shipper, why were the conditions not put *in* the receipt as they were in the bill of lading, instead of being merely printed on the back of it, and referred to? The proper construction of the two papers is essentially different. The receipt is an attempt by the carrier to limit its common law liability by notice. *Western Transportation Co.* v. *Newhall,* 24 Ill. 466; *Michigan, etc. Railroad Co.* v. *Hale,* 6 Mich. 244; *Newell* v. *Smith,* 49 Vt. 255; *Ayers* v. *Western Railroad Co.* 14 Blatch. 9; *Prentice* v. *Decker,* 49 Barb. 21; *Lineberger* v. *Westcott,* id. 288; *Southern Express Co.* v. *Percill,* 37 Ga. 103; *Railroad Co.* v. *Manufacturing Co.* 16 Wall. 318.

In the latter case the carrier gave a receipt for goods, as follows: "Received from V. & M. Bostwick, as consignor, the articles marked, numbered and weighing as follows, (wool described,) to be transported over said road to the depot in Detroit, and there to be delivered to . . . . . agent or order, upon the payment of the charges thereon, and subject to the rules and regulations established by the company, a part of which notice is given on the back hereof. This receipt is not transferable.—Hastings, Freight Agent." On the back was printed the following: "The company will not be responsible for damages occasioned by delays, storms, accidents or other causes, * * * and all goods and merchandise will be at the risk of the owner thereof while in the company's ware-

houses, except such loss or injury as may arise from the negligence of the agents of the company." The action was for a loss of the wool by fire while in the depot at Detroit. Justice DAVIS, delivering the opinion of the court, passing upon the effect of the receipt, said: "It is insisted, however, by the plaintiffs in error, if they are not relieved from liability as carriers by the provisions of their charter, that the receipt taken by the consignor, without dissent, at the time the wool was received, discharges them. The position is, that the unsigned notice printed on the back of the receipt is a part of it, and that taken together they amount to a contract, binding on the defendant in error." After referring to the cases holding that a carrier can, by special contract assented to by the shipper, limit his liability, he holds that the receipt and notice did not amount to such a contract, and says the weight of authority is against its validity. Justice BREESE, rendering the opinion of this court in the *Western Transportation case, supra,* speaking of the receipt there relied upon, said: "No distinction has been attempted to be made, nor can be made, between a public notice in the newspapers or by hand-bills or otherwise, and the notice conveyed by this receipt, it being printed on the back of it, for wherever it may be found it is but notice."

Bills of lading are both receipts and contracts to carry. "So far as they acknowledge the delivery and acceptance of the goods they are mere receipts; as to the rest they are contracts." (Hutchinson on Carriers, 122.) If the contention of appellant is correct, the paper of May 4 is a receipt for the goods, with a contract to carry upon certain conditions printed on the back of it, signed by no one. We are clearly of the opinion that such a receipt should not be given the legal effect of a special contract limiting a public carrier's common law liability. No good reason can be shown why, if the intention is to so contract with the shipper in good faith, the conditions should not be embodied in the contract and properly signed,

as was done in the bill of lading dated May. 6, and this we understand to be in harmony with the decisions in New York. There the Court of Appeals has, as before stated, held that where the conditions are embodied in the receipt or bill of lading, as in *Belger* v. *Dinsmore,* 51 N. Y. 166, the acceptance of the paper is conclusive evidence of the fact that the shipper knew its contents and assented thereto; but we have been able to find no decision of that court giving such a construction to a mere receipt calling attention to conditions on the back of it. On the contrary, it has there been uniformly held, that the liability can not be restricted or limited by notice, whether brought home to the shipper or not. (*Belger* v. *Dinsmore,* 34 How. Pr. 421, and cases cited.) Moreover, the receipt of May 4 bears upon its face a refutation of the idea that the shipper assented to it as a contract of shipment. It states that a bill of lading is to be given thereafter. That fact also shows that neither party intended it to be more than a receipt for the goods. The evidence as to the custom of parties in like transactions tends to support this view, and the Appellate Court has so found the fact.

In our opinion the transaction, as evidenced by the two papers, shows, on its face, that the only contract of shipment ever made between the parties, in writing, was the bill of lading issued after the goods had been shipped, and that the case is clearly within the rule announced in *Bostwick* v. *Baltimore and Ohio Railroad Co. supra.*

The judgment will be affirmed.

*Judgment affirmed.*