# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

## THIRD DISTRICT—MAY TERM, 1896.

### Wabash Railroad Co. v. E. W. Lannum.

1. CONTRACTS—*Signed Under Protest—Effect of.*—Where a party ordered and a railroad company furnished cars for the shipment of stock, under a contract signed by the agent of the company, and the stock was received and shipped by the company under such contract, but another contract was presented to the shipper while he was *en route* with the stock, with a request that he sign it, which he did, in order to secure a right guaranteed by the original contract, but under protest, making it clear that he did not assent to its terms, *it was held*, that the original contract must control and that the second was not binding on the shipper.

2. COMMON CARRIERS—*What Amounts to Agreement for Free Transportation by.*—A letter from the agent of a railroad company containing the following language: " The rate on cattle carload to New York is 31 cents. You can go via Chicago and Buffalo and stop and sell at either place or go on to New York," gives the party to whom it is addressed a right to free transportation upon the train with the cattle.

**Transcript,** from a justice of the peace. Appeal from the Circuit Court of Moultrie County; the Hon. EDWARD P. VAIL, Judge, presiding. Heard in this court at the May term, 1896. Affirmed. Opinion filed November 21, 1896.

### STATEMENT OF THE CASE.

Appellee desired to ship four cars of cattle from Bruce, a station on the line of appellant's railroad, to New York, with the privilege of stopping and selling at Chicago and Buffalo.

(84)

The company did not keep an agent at Bruce; the business of that station was transacted by its agent at Sullivan, one F. C. Logan, and to him appellee made application for terms and rates for shipment.

He prepared, signed and delivered to appellee a written reply as follows: "The rate on cattle, carload, to New York is 31 cents. You can go via Chicago and Buffalo, and stop and sell at either place or go on to New York. Let me know what kind of cars you would want and what day you want to load as soon as possible.

F. C. LOGAN,

Sullivan, 9–6–'93."

Appellee at once ordered four cars to be brought to Bruce, received them, loaded them with cattle and they were taken into one of appellant's freight trains for transportation under the terms of said writing.

Appellee accompanied the cattle, and when the train reached Sullivan the agent of the company presented to him an instrument called "live stock shipper's contract" for his signature. Appellee testified he objected to some of its terms and conditions, and signed it under protest. It included a paper entitling him to free transportation upon the train with the stock.

He did not desire to stop at Chicago but concluded to put the cattle on the Buffalo market. The connecting carrier (The Delaware, Lackawanna & Western R. R. Co.) to whom the appellant company delivered the cars for transportation beyond its line refused to take the cattle to the Central Stock Yards in East Buffalo, where cattle consigned to be sold in Buffalo are delivered, but unloaded the stock at other yards, which, as it seems, were only used for the reception of stock to be reshipped, and were located nearly five miles from the sales yards.

Appellee remained there nearly twenty-four hours endeavoring to get his stock to the market yards in Buffalo, and failing, had them reloaded on the cars of the said connecting carrier company, to be conveyed to New York City. While *en route* appellee learned the cattle were billed to

Hoboken and that there were no sales yards there, and he procured their destination to be changed to Jersey City.

There he sold at a loss, in comparison with the price he might have obtained had the cattle been delivered for sale at Buffalo, of twenty cents per hundred weight, and the cattle lost in weight by the unloading and reloading at Buffalo and shipment from thence to New York from twenty to forty pounds each.

He contended the appellant company rendered way bills to the connecting carriers containing charges against the stock in the sum of $21.43 in excess of its proportionate amount of the through total rate, and that he was forced to pay such excess. He brought suit before a justice of the peace and recovered judgment, and the case came into the Circuit Court by appeal, where he again prevailed, and from such last judgment the company perfected this appeal to this court.

Counsel for appellant company urge three grounds for reversal as follows:

First. Appellee was not entitled to recover the difference between the rate given him by appellant's agent at Sullivan and the true rate as fixed by the schedule, because the inter-state commerce act prohibited appellant from transporting property at less than the schedule rate.

Second. Appellee was not entitled to recover from appellant for the failure of its connecting line to unload the stock at the Central Yards at East Buffalo: (1), because there was no contract, expressed or implied, to transport said stock to said yards, and (2), because under the contract in evidence it was expressly agreed that appellant should not be responsible for any damage or injury to said stock after it should leave the line operated by appellant, and that all responsibility of appellant should cease after said stock should be delivered to a connecting line to be forwarded to its destination, and (3), because appellee did not show that he made claim for damages against appellant within the time limited in said contract.

Third. Because the court erred in denying appellant's motion for a new trial.

GEO. B. BURNETT, attorney for appellant.

R. M. PEADRO, attorney for appellee.

MR. PRESIDING JUSTICE BOGGS DELIVERED THE OPINION OF THE COURT.

The argument in support of the first ground upon which a a reversal is asked is that the rate of thirty-one cents per hundred pounds from Bruce to New York, agreed upon by appellee and appellant's agent is less than the rates fixed by the Inter-State Commerce Commission to be charged by all roads for such service, which is thirty-three cents per hundred pounds, and that for that reason the contract was unlawful under the inter-state commerce commission act, which forbids and declares unlawful contracts granting special rates to shippers.

The amount charged upon the way-bill and paid by appellee in addition to the charges of the Delaware, Lackawanna & Western Railroad Company for handling and transporting the cattle from East Buffalo was $194.60. This, as counsel for appellant company admits (page 19 of his brief), is at the rate of a fraction more than thirty-five cents per hundred for the proportional distance from Bruce to Buffalo, or about two cents per hundred pounds in excess of the rate fixed by the schedule adopted by the Inter-State Commerce Commission, but counsel insist, or rather suggest, for there is no proof upon which to base an insistence, that the excess consists of the costs of loading and reloading the cattle at Buffalo.

We can not adopt the suggestion in the absence of proof, and if we are correct in the view hereinafter expressed as to the right of appellee under the contract, the costs of unloading and reloading the stock at Buffalo should not be cast upon him, and as the amount thereof was added to his freight bill and collected from him it was proper he should be awarded judgment therefor against the appellant company.

The second ground urged for reversal is not tenable. The

writing signed by Logan, appellant's agent, and delivered to appellee may be resorted to to determine the duty and obligation of the appellant company and its connecting carriers, its agents.

This writing, construed in the light of the testimony, proper to be considered in connection with its construction, constituted an undertaking on the part of the company that the cattle should, if the appellee so desired, be transported to Buffalo and there delivered at the stock yards to which the appellant company, or its connecting carrier, usually delivered stock which was intended to be placed upon the market for sale in that city.

Counsel, however, urge the instrument called "Live Stock Shipper's Contract," which the appellee signed at Sullivan, while *en route* with the cattle from Bruce to their destination, is to be resorted to to determine the respective duties and obligations of the parties. We think not.

The appellee ordered, and the appellant company furnished, cars for the cattle under the other contract. The cattle were delivered by appellee for shipment, received by the company and shipped by it under such other contract. While *en route* and while the train in which the cattle were being carried was stopped at the station at Sullivan, an agent of the company presented another written contract and requested appellee, who was accompanying the cattle upon the train, to sign the same. He did so under protest and at the same time questioned whether it correctly and fully set forth the contract.

He had but little time, before the train was again on its way, in which to express himself with relation to it, but we think it appeared from the testimony he said quite enough to make it clear he did not assent to its terms, and that he only signed it for the purpose of securing the necessary papers to enable him to ride free upon the trains of the company and its connecting carriers.

It can not be questioned the writing first signed by the agent at Sullivan, and under which the cattle were delivered and received and shipped, and under which the appellee rode

on the train from Bruce to Sullivan, contemplated and included the free transportation of the appellee upon the train with the cattle.

The actual agreement under which the cattle were shipped was that consummated between the parties before the stock was delivered into cars of the company at Bruce, and as it did not appear the appellee ever assented to another contract or consented to any change in the terms of the actual contract he can not be deemed concluded by the terms of the writing signed by him at Sullivan.    Mer. Des. Trans. Co. v. Furthmann, 149 Ill. 66.

We therefore hold the appellee was entitled to recover damages from the appellant company for the failure of its connecting carrier to unload the stock at the central yards at East Buffalo.

It would follow from what has been said we do not think the terms of the live stock shipper's contract by which, among other things, it was provided the appellant company liable should not be deemed responsible for any damages or injury occurring after the cattle should be delivered to a connecting carrier, and that claims for any damage or injury should be filed with the company within the time fixed by such contract have any binding force as against the appellee.

Our conclusions expressed as to the first and second grounds are applicable to and fully dispose of all urged in support of the third ground.

The judgment must be and is affirmed.