### ALLEGHENY VALLEY BRICK CO. v. C. W. RAYMOND CO.

(Circuit Court of Appeals, Second Circuit.    December 15, 1914.)

#### No. 75.

1. REFORMATION OF INSTRUMENTS ☞30—ACTIONS AT LAW.

In an action at law on a contract, the court could neither reform the contract to include a provision as to the time for performance by plaintiff, nor recognize as an equitable defense plaintiff's failure to perform the omitted provision, as while courts of equity, in cases of mutual mistake, may make the written evidence of an agreement correspond to the understanding of the parties, in the federal courts the distinction between suits in equity and actions at law is maintained.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 117, 118; Dec. Dig. ☞30.]

2. REFORMATION OF INSTRUMENTS ☞45—SUFFICIENCY OF EVIDENCE.

A court of equity cannot reform a written agreement for mutual mistake, unless the mistake is proved by clear, convincing, and satisfactory evidence.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 157–193; Dec. Dig. ☞45.]

3. CONTRACTS ☞212—CONSTRUCTION—TIME OF PERFORMANCE—"REASONABLE TIME."

Where written agreements by a manufacturer of brick-making machinery, whereby it sold certain machinery to defendant, and agreed to furnish defendant complete working drawings for the construction of a patented kiln, and to license defendant to use such kiln, specified no time for delivering the machinery, drawings, and license, performance within a

reasonable, time was implied, and what was a "reasonable time" depended on the circumstances of the particular case.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 944–955; Dec. Dig. ☞212.

For other definitions, see Words and Phrases, First and Second Series, Reasonable Time.]

4. TRIAL ☞177—DIRECTION OF VERDICT—MOTION BY BOTH PARTIES.

Where, in an action on a contract, both parties moved for a directed verdict, and neither party asked to go to the jury, the trial court's findings, supported by evidence, that plaintiff was not in default when defendant repudiated the contract, would be accepted by the Circuit Court of Appeals.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 400; Dec. Dig. ☞177.]

5. CONTRACTS ☞279—PERFORMANCE—TENDER OF PERFORMANCE—WAIVER.

Under a contract to furnish complete working drawings for the construction of a patented kiln, and to license defendant to use it, in consideration of defendant's agreement to pay a specified amount against sight draft with license and drawings attached, a tender of the license and drawings was not necessary, where defendant wired plaintiff that all consignments of any kind would be refused by it, as a tender is waived where a tenderee makes any declaration amounting to a repudiation of the contract, or takes any position rendering a tender a vain and idle ceremony.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1233–1248; Dec. Dig. ☞279.]

6. SET-OFF AND COUNTERCLAIM ☞24—CAUSE OF ACTION.

In an action on a contract for the sale of machinery, and to furnish working drawings of a patented kiln and a license to use it, in which defendant counterclaimed for delay in performance by plaintiff, when the court determined that there was no breach of the contract by plaintiff, the counterclaim necessarily failed.

[Ed. Note.—For other cases, see Set-Off and Counterclaim, Cent. Dig. §§ 39–42; Dec. Dig. ☞24.]

7. TRIAL ☞177—QUESTIONS OF LAW OR FACT.

In an action on a contract, in which defendant counterclaimed for delay in performance by plaintiff, the contention that the dismissal of the counterclaim involved a finding of law on conflicting testimony was without force, where both parties subsequently moved for a directed verdict, and the court decided for plaintiff, thereby holding in effect that there was no unreasonable delay by plaintiff.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 400; Dec. Dig. ☞177.]

In Error to the District Court of the United States for the Western District of New York.

This cause comes here on writ of error to the District Court of the United States for the Western District of New York to review a judgment entered on February 3, 1914, in favor of the plaintiff, the C. W. Raymond Company, for the sum of $3,250.50 damages, together with the sum of $255.74 costs.

The plaintiff below, the C. W. Raymond Company, is a corporation organized and existing under and by virtue of the laws of the state of Ohio, resident and doing business in Dayton, in said state, and will be hereinafter referred to as plaintiff. The defendant below, the Allegheny Valley Brick Company, is a corporation organized and existing under and by virtue of the laws of

the state of New York, resident and doing business at Olean, in said state, and will be hereinafter referred to as defendant.

On or about March 18, 1911, plaintiff and defendant entered into a contract in writing wherein it was agreed that plaintiff would grant a license to defendant to use and operate one continuous producer gas-fired kiln, containing certain improvements set forth in letters patent of the United States then owned and controlled by plaintiff. It was also agreed that plaintiff would furnish defendant with complete working drawings for the construction of one compartment-type gas-fired continuous kiln having 18 compartments or sections, each holding about 40,000 paving blocks, 10 pounds burned. The consideration was an agreement by defendant to pay to plaintiff "the sum of $2,500 cash against sight draft with license and drawings attached." The defendant also agreed that plaintiff's patents are valid and that it would not contest them.

The plaintiff, on or about March 27, 1911, sent its representative to Olean to locate the kiln to be constructed in pursuance of the plans specified in the contract, and he met the superintendent and general manager of defendant and looked over the ground with reference to production of the plans and location of the kiln. The ground was at that time in unsuitable condition for construction work, owing to recent rains, and defendant was so informed, and was also told that the necessary drawings would be forwarded in a short time. The plaintiff subsequently prepared the drawings and specifications, and about May 27, 1911, forwarded to defendant the license. On May 27, 1911, the plaintiff drew a sight draft on defendant for $2,500, to which was attached the drawings and specifications and other necessary details incident to the construction and forwarded the same to the defendant. A license statement was also attached. Payment of the draft was refused.

It also appears that on March 18, 1911, the defendant placed an order with the plaintiff for certain machinery and supplies, and for which it was agreed to pay $10,190 and freight from Dayton, Ohio. The title to the machinery was to continue in plaintiff until paid for in full. The plaintiff at once entered upon the construction and manufacture of the machinery thus ordered; and on May 24, 1911, defendant telegraphed plaintiff: "All consignments of any kind will be refused by us." Plaintiff, after giving due notice to defendant and after advertising the sale, sold at public sale the materials manufactured under defendant's order, and realized the sum of $7,250. The difference between the amount realized and the amount defendant had agreed to pay was $2,940.

The plaintiff sued upon two causes of action therefore: First, for the breach of the contract in refusing payment of the draft for $2,500; second, for the difference between the amount defendant agreed to pay for the machinery and the amount realized at the public sale—$2,940. Judgment was asked in the sum of $5,440, with interest.

The defendant's answer denied due performance on part of plaintiff, and denied any tender of plans and specifications, and claimed that the delay on the part of plaintiff in furnishing the plans, specifications, drawings, and machinery was unreasonable. Defendant also set up a counterclaim for damages by reason of the failure and delay of plaintiff in furnishing plans, specifications, drawings, and machinery, which prevented the brick kiln from being installed in the spring of 1911.

Hastings & Larkin, of Olean, N. Y., for plaintiff in error.

Robert E. Murrin, of Olean, N. Y. (Henry P. Nevins, of Salamanca, N. Y., of counsel), for defendant in error.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). The plaintiff corporation is a manufacturer of brick-making machinery of all kinds, and also of brick kilns, and among the latter of the Youngren

patented continuous fire kilns. It entered into the two written contracts referred to in the preliminary statement.

[1, 2] The first of the two contracts is the one in which plaintiff agreed to furnish defendant with complete working drawings for the construction of a kiln and did not specify a time within which delivery was to be made. Defendant in its answer, however, alleged that delivery was agreed to be made within two weeks, but that this portion of the agreement was omitted from the writing by mutual mistake. And it asked that the writing should be reformed by adding to it the words:

"That said license and said complete working drawings are to be furnished by the plaintiff to the defendant within two weeks from the date hereof."

It is, of course, within the province of a court of equity, in cases of mutual mistake, to make the written evidence of an agreement correspond to the understanding of the parties. A common-law court, however, possessed no such power. In some of the states the distinction between actions at law and suits in equity has been abolished, and a suit for the reformation of a written contract, which would under the former system have been a suit in equity, is in such states a civil action under the Code. But in the federal courts the distinction between suits in equity and actions at law is maintained, and in a common-law action, such as this is, a federal court is without power to reform a contract, or to recognize as an equitable defense the failure of one of the parties to perform a condition which is alleged to have been omitted by mutual mistake from the contract as written. Moreover, in a court of equity it is not within its province to reform a written agreement, unless the evidence of the mutual mistake is clear, convincing, and satisfactory. And if in this action the court had the power to reform, there is no such clear, convincing, and satisfactory evidence that anything was left out of the writing which the parties intended to put into it as would be required to enable the court to exercise the power.

As respects the second contract, that for the machinery which was to be manufactured, no time was specified for the delivery of the machinery. It is not seriously claimed, however, in respect to this contract that any certain time was fixed within which delivery of the machinery was to be made. The testimony showed that the matter of time was discussed at the time the contract was written, but objection was made to specifying the time, and it was intentionally omitted.

[3] As no time for performance is specified in either contract the implication is that a reasonable time was intended. What is "a reasonable time" depends upon the circumstances of each particular case. Whether the question of what is reasonable time is one of law for the court, or of fact for the jury, is not important in this case, as each side asked for direction of a verdict and dismissal, respectively, and neither asked to go to the jury on the whole case or any part of it.

[4] It appears that on April 25, 1911, defendant wrote plaintiff inquiring as follows:

"Will you kindly give us this information? In your opinion would your Mr. ———— be a suitable and competent man for us to hire in the construction of your Youngren kiln?"

To this the following reply was returned, dated April 28, 1911:

"Answering your communication of the 25th inst., we wish to say that, if we thought the party referred to therein was competent to build, construct, and start a kiln, the connection between him and ourselves would not be severed on the last day of this month, as will be done by request of ourselves. You will doubtless within the next few days receive a communication from a man by the name of ————, who has had experience with a kiln, and we are confident is capable of building it. He stated to us that he would be willing to contract for the construction of the kiln; furthermore, we desire to say to you that during May some time we will have released from Mason City, Iowa, a young man who has built a large kiln and started, or is with Mr. Vater while it is being started. We know that this young man is thoroughly competent to look after your kiln, and if you will not need any one before that time we believe he would be the best party whom we could recommend to you."

This correspondence does not indicate that any breach of contract had occurred, or that plaintiff was regarded by defendant as being in default. The brick kiln to be built was plaintiff's Youngren continuous brick kiln, and it was to be built according to plaintiff's plans, specifications and drawings, which defendant now insists plaintiff agreed to furnish within two weeks from March 18, 1911, when the contract was executed. If plaintiff was in default, or was improperly delaying the forwarding of the plans and specifications, the natural thing would have been to have called attention to the matter in defendant's letter of April 25th, and to have urged immediate delivery. Moreover, there is testimony in the record showing that the machinery which defendant ordered could not be manufactured in less than 90 days, and that plaintiff began the manufacture of it as soon as the order was received.

No other communication than that already mentioned passed between these parties until May 23, 1911, when defendant telegraphed plaintiff that, owing to its long delay in furnishing plans and machinery, the order was canceled.

As both sides left the case to the court, its findings that plaintiff was not in default will be accepted by us. That the trial court found adversely to defendant on the question of reasonable time must be inferred from the fact that plaintiff obtained judgment on both causes of action.

[5] The defendant alleges that nowhere in the complaint has plaintiff alleged that the plans, specifications, drawings, and license, together with the draft for $2,500 attached, were duly presented by plaintiff, and acceptance refused by defendant. The plaintiff alleged that in performance of its contract it prepared the necessary drawings and specifications called for in the contract, and forwarded the same to defendant in Olean, N. Y., in connection with a draft for $2,500, which draft is specifically set forth in words and figures, and that attached to the draft was the license, as called for in the contract; that the draft was duly presented to the Exchange National Bank of Olean, N. Y., for payment, and payment was refused. Defendant asserts that a search of the record will reveal that it is barren of any proof whatever showing that the plans, specifications, drawings, and license were ever presented to defendant and refused by it. The evidence shows that plaintiff sent a draft drawn on defendant to the Exchange National Bank of Olean,

219 F.—31

which was returned with notice of protest, and that attached to the draft were drawings, specifications, and the license, as called for by the contract.

It is also argued that if plaintiff relied upon a waiver of presentment, because of the attitude of defendant in refusing to accept any consignments, then this waiver should have been alleged and proved upon the trial. As the complaint was drawn with the idea in mind of due performance, we are told that it was incumbent upon plaintiff to show that it had performed every act necessary to be performed on its part in order to put defendant in default. But plaintiff was under no necessity of alleging tender of performance by plaintiff and refusal to perform by defendant. The law does not require an idle ceremony to be gone through. A tender is waived where a tenderee makes any declaration which amounts to a repudiation of the contract, or takes any position which renders a tender a vain and idle ceremony. Columbia Bank v. Hagner, 1 Pet. 455, 7 L. Ed. 219; Duffy v. Patten, 74 Me. 396. When defendant sent its telegram of May 24, 1911, saying, "All consignments of any kind will be refused by us," it waived a tender. In the face of this distinct and unqualified repudiation of the contract it is idle to claim that plaintiff should have gone through the futile ceremony of a formal tender.

At the time plaintiff was informed by defendant that all consignments of any kind would be refused, it had already manufactured about 40 per cent. of the machinery ordered by defendant. It completed the manufacture of the remainder of the machinery. All the machinery manufactured under the contract was sold by plaintiff at public auction. Notice of sale was given in advance to defendant, who was at the same time informed that it would be held liable for any loss which might be occasioned thereby. The sale was also duly advertised. The amount realized from the sale was $7,250, but the property was subsequently sold for $9,900, making a loss of $290, which plaintiff was allowed to recover in the second cause of action, along with certain other charges making the total $390, with interest. In the first cause of action plaintiff was allowed to recover $2,500, with interest.

[6, 7] It is assigned as error that the court dismissed the defendant's counterclaim. The counterclaim asked damages to the extent of $10,000 for the plaintiff's failure to perform its contract in accordance with its terms and conditions, thereby preventing defendant from manufacturing brick, to its great loss and damage. The defendant's right to recover under the counterclaim was based upon the theory of unreasonable delay on the part of plaintiff in complying with the contract. Surely the plaintiff could not be entitled to recover upon its contract, and defendant at the same time have a right to recover upon its counterclaim damages it alleges it suffered by the failure of plaintiff to perform the contract. When the court determined that plaintiff had not been guilty of a breach of contract, the counterclaim, based on the theory that plaintiff had been guilty of a breach, was inevitably eliminated from the case. Moreover, defendant failed as matter of fact to show upon the trial as the basis of its counterclaim that it had actually been delayed by reason of any act or failure to act upon the part of plaintiff. As the trial court, with the assent of both sides, found as a fact that there

was no unreasonable delay, there is no force in the contention that the dismissal of the counterclaim, which antedated the final disposition of the case, involved a finding of law on conflicting testimony, especially as the counterclaim set up in the answer was not for "unreasonable delay," but for failure to furnish complete working drawings and specifications "within two weeks after" the parties had entered into the agreement of the 18th day of March, 1911.

There are numerous assignments of error relating to admission or exclusion of testimony. But as there was no unreasonable delay on the part of plaintiff in performing its contract, no error was committed in excluding testimony to show the amount of the damages sustained by defendant because of such delay as actually occurred.

Judgment affirmed, with costs.