### POND CREEK MILL & ELEVATOR CO. v. CLARK.

(Circuit Court of Appeals, Seventh Circuit. October 5, 1920. Rehearing Denied January 6, 1921.)

No. 2734.

1. **Sales ⧠1(1)—Failure to specify time for delivery and payment does not show incompleteness.**

A written agreement for sale is not incomplete as a contract because it fails to specify the time of delivery and payment, since in the absence of agreement the law requires delivery within a reasonable time and payment on delivery, and those provisions are considered as incorporated in the written agreement.

2. **Limitation of actions ⧠27—Contract partly in parol is a parol contract.**

If evidence of prior dealings between the parties is admissible to supply omitted terms of the writing in controversy, because that is incomplete, the contract then rests partly in writing and partly in parol, which under the law makes the agreement a parol contract as respects the applicable statute of limitations.

3. **Sales ⧠77(2), 79—Provision fixing price "f. o. b." does not require delivery at specified place.**

A contract of sale, which in connection with the price employs the term "f. o. b." at a given point, does not require the seller actually to deliver the goods at indicated point; but that expression qualifies only the price, and means that wheresoever the goods may be shipped the seller will either pay freight to the indicated point, or, if the goods are not shipped there, it will deduct or permit the purchaser to deduct from the fixed price the amount of freight to the point indicated.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, F. O. B.]

4. **Sales ⧠161—Without agreement, delivery to carrier at seller's plant is sufficient.**

Under a contract for the sale of goods to be shipped to a given point, in which nothing is stated as to the place of delivery, delivery is complete when the goods are given to a common carrier at the place the seller produces the goods or has them for sale.

5. **Sales ⧠79—Contract fixing price "basis Chicago" held not to require delivery at Chicago.**

In a contract for the sale of flour from a miller in another state to a flour producer in Chicago, where the price was stated as basis Chicago, and the other provisions indicated that the flour was not all to be delivered in Chicago, the expression "basis Chicago" will be construed to refer to the price, and not to the place of delivery, in the absence of evidence establishing a contrary intent.

⧠For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**6. Evidence ⬉457—Party cannot testify to meaning of words used in written contract.**

A party to a written contract for the sale of flour cannot testify that the expression "basis Chicago," used therein, meant delivery was to be made in Chicago, although he might have testified to the meaning of those words, if there had been a prearranged or agreed meaning fixed by the parties.

**7. Customs and usages ⬉19 (3)—Evidence held not to show custom controlling contract.**

Testimony by witnesses, who were familiar with trade terms and usage in other states, as to the meaning of the words "basis Chicago" in a sale contract, *held* not to show a general trade custom giving a special meaning to those words, so generally prevailing that both parties are presumed to have dealt in reference to it, or to show a local custom of which both parties had actual knowledge.

**8. Customs and usages ⬉12(1)—Knowledge or presumption thereof necessary before custom enters into construction of contract.**

A trade custom cannot aid in the interpretation of a contract, unless it was either a general custom so widely prevailing or recognized that both parties are presumed to have dealt in reference to it or a local custom of which both parties had actual knowledge.

**9. Limitation of actions ⬉169—Actions on contract performable in another state held barred.**

A contract for the purchase of flour from a mill in Oklahoma, which did not specify place of delivery, is performable in Oklahoma, and the right of action for breach accrued there, so that, under Hurd's Rev. St. Ill. 1919, c. 83, § 20, barring the action in Illinois if it is barred in the state where the right arises, the cause of action was barred in five years under Rev. Laws Okl. 1910, § 4657, whether it be considered an oral or written contract, though under Hurd's Rev. St. Ill. 1919, c. 83, § 16, it would not be barred until ten years if the contract was written.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action by Frank G. Clark against the Pond Creek Mill & Elevator Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded for new trial.

The suit was for breach of contracts for sale of flour. The first contract was for 1,000 barrels, and is evidenced by the following correspondence between defendant in error, Clark, a flour dealer at Chicago, and plaintiff in error. a milling company at Pond Creek, Okl.:

Telegram, Clark to company, March 4, 1907 (decoded) : "Book one thousand barrels same price."

Telegram, company to Clark, March 5, 1907 (decoded) : "Booked one thousand barrels more Lily. Shipping today car Expansion in jute. We have no half barrel sacks."

Letter, company to Clark, March 5, 1907: "We are in receipt of your message asking that we book a thousand barrels more of Lily at the same price as yesterday's purchase $3.15 net bulk basis Chicago. * * *"

Letter, Clark to company, March 5, 1907: "I have your telegram of even date accepting my offer for another one thousand barrels of Expansion which is all in order, advising also. shipping a car of Expansion in jute. * * * Will give you shipping instructions soon."

A second contract for 200 barrels, as follows:

Letter, Clark to company, March 8, 1907: " * * * I have several orders on the book for Clear and wish you would book 200 barrels of this Clear at $2.75 jute Chicago to go with patent. * * * You might fill and hold for

⬉For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

shipping directions one or two cars in half barrel sacks. * * * I have sold 125 barrels * * * to the Millers' Product Co. at $3.15 bulk Chicago. * * *"

Letter, company to Clark, March 11, 1907: "* * * Have entered your order as requested for 200 barrels of Clear at $2.75 net jute basis Chicago, shipments to be made with your Lily shipments."

A third contract for 2,000 barrels, as follows:

Telegram, Clark to company, March 30, 1907 (decoded): "Book one thousand barrels at $3.20 and one thousand barrels at $3.15 net."

Telegram, company to Clark, March 30, 1907 (decoded): "Entered your order for 1,000 barrels at $3.20 and 1,000 barrels at $3.15 net bulk Chicago."

Letter, company to Clark, March 30, 1907: "We are in receipt of your message and now confirm same to you 1,000 barrels Lily at $3.20 and 1,000 barrels $3.15; these prices net to us in bulk basis Chicago."

Letter, Clark to company, March 30, 1907: "I wired you this morning to book 1,000 barrels of Lily at $3.20 bulk and 1,000 barrels at $3.15 bulk Chicago, all of which I now confirm. I will be sending you sacks for filling, and will give you shipping directions as soon as I can get same from customers."

From time to time the total of 3,200 barrels covered by this correspondence was ordered by Clark to be shipped, but no shipment was made; the company claiming it could not get the flour. Finally Clark, unable to obtain delivery of the flour, on the following June 10th purchased flour in the Chicago market to cover these contracts, being required to pay an advance which, on the 3,200 barrels, amounted to $4,150 over the agreed prices.

The suit was begun in September, 1917 (more than six years after the cause of action accrued), in the municipal court of Chicago, and removed to the federal court. In defense it was pleaded, inter alia, that the contracts were not in writing, and action thereon was barred by the Illinois statute of limitations barring actions on oral contracts not brought within five years after right of action accrued; also that they were contracts of the state of Oklahoma, that by the statutes of that state action on oral contracts is barred in three years and on written contracts in five years after right of action accrues, and that by the statute of Illinois a cause of action barred in the state where it arises is barred in Illinois.

The replication alleged the contracts to be Illinois contracts, that the cause of action accrued in Illinois, and that action is not barred till ten years after right of action accrued.

J. D. Woley, of Chicago, Ill., for plaintiff in error.

E. C. Tourje, of Chicago, Ill., for defendant in error.

Before BAKER and ALSCHULER, Circuit Judges, and FITZHENRY, District Judge.

ALSCHULER, Circuit Judge (after stating the facts as above). Assuming that the above-recited correspondence constitutes the contract between the parties, there was no question of its breach by plaintiff in error, and the right of recovery by defendant in error is clear, unless the action is barred by limitation. In the state of Oklahoma actions on oral contracts are barred in three years, and on contracts in writing in five years, after cause of action accrues. Section 4657, Rev. Laws Oklahoma. In Illinois the statute is five years on oral, and ten years on written, contracts. Chapter 83, § 16, Hurd's Rev. Stat. Ill.

The suit having been brought more than six years after the cause of action accrued, if the statute of Oklahoma has application, the action is barred, regardless of whether the contract is oral or written; the Illinois statute providing that, where the action is barred in the state where the right of action arises, it is barred in Illinois. Chapter

83, § 20, Hurd's Rev. Stat. Ill. If the right of action arose in Illinois, the action is still barred unless the contract is in writing.

[1] It is maintained for plaintiff in error that the contract is oral, because the writing is wanting in features essential to a contract, viz. time of delivery and payment. True, neither of these conditions is specified, but the law provides that where a contract, otherwise complete, specifies no time for delivery of goods sold, the delivery must be made within a reasonable time (Minneapolis Gas Light Co. v. Kerr, etc., Co., 122 U. S. 300, 7 Sup. Ct. 1187, 30 L. Ed. 1190; In re Hellams (D. C.) 223 Fed. 460; Brick Co. v. Raymond, 219 Fed. 477, 135 C. C. A. 189; McKinnie v. Lane, 230 Ill. 544, 82 N. E. 878, 120 Am. St. Rep. 338; Driver v. Ford, 90 Ill. 595); and if it does not specify time for payment it should be on delivery (Guarantee T. & T. Co. v. First Nat. Bank, 185 Fed. 373, 107 C. C. A. 429; Audenried v. Randall, Fed. Cas. No. 644; Dwyer v. Duquid, 70 Ill. 307; Metz v. Albrecht, 52 Ill. 491). The contract is not void for want of these specifications, but will be construed as though it incorporated the elements of delivery within reasonable time, and payment upon delivery. Leis v. Sinclair, 67 Kan. 748, 74 Pac. 261; Atwood v. Cobb, 16 Pick. (Mass.) 227, 26 Am. Dec. 657; and cases before cited.

[2] Some evidence appeared tending to show that in past dealings between the parties deliveries were made by the seller at Chicago, and payment was made by draft payable on arrival of goods there. But if such things could in any event be shown for the purpose of importing into the contract conditions as to these subjects, other than those which the contract provides, or, what is the same thing, the law fixes, it would be supplementing the written contract by terms not included therein, and, if this were permissible at all, we would then have a contract resting partly in writing and partly in parol, which under the law would make of the entire agreement a parol contract (Merchants', etc., Co. v. Furthmann, 149 Ill. 66, 36 N. E. 624, 41 Am. St. Rep. 265; Driver v. Ford, 90 Ill. 595; Cameron Coal, etc., Co. v. Universal Metal Co., 26 Okl. 615, 110 Pac. 720, 31 L. R. A. (N. S.) 618; Atwood v. Cobb, 16 Pick. (Mass.) 227, 26 Am. Dec. 657), and in such case the limitation statutes of either state would bar the action.

Counsel for defendant in error unqualifiedly concede that the contract is an Oklahoma contract, in that the final acceptance of it was in Oklahoma by the plaintiff in error, who resides there. But they earnestly contend that by the terms of the contract it was to be performed in Illinois, by delivery thereof the subject-matter of the contract, the flour, and that it was in Illinois, therefore, that the right of action on the contract accrued. On the other side, it is claimed delivery to the carrier in Oklahoma was delivery to the buyer there, and that this made Oklahoma the place of performance and accrual of the right of action.

Whether delivery to buyer was to be at Oklahoma or Chicago depends on the effect to be given to the words "basis Chicago" as employed in the correspondence. No cases have been cited, and we are unable to find any wherein construction has been given to the word "basis" as here employed. In the suit of Kaw City, etc., v. Purcell,

.etc., decided by the Oklahoma Supreme Court, 19 Okl. 357, 91 Pac. 1022, in a contract of sale of corn by a firm at Kaw to the buyer in Indian Territory, the term "basis Kaw" was employed. It was stipulated in the case that "basis Kaw" had reference to the price, and that it meant that, regardless of the place from whence the corn was actually shipped to the buyer, he would have to pay freight charges only on the assumption that it had been shipped from Kaw. The court, however, did not pass upon this feature, merely accepting the stipulated meaning, which, if here applied, would construe the words as having reference, not to delivery, but to price.

[3] It is quite generally accepted as the law that where in a contract the price of goods is fixed, and in connection with the price is employed the term "f. o. b." at a given point, it means that this refers to and qualifies only the price, and does not indicate that the seller is actually to deliver the goods at the indicated point, and it is construed to have no reference to delivery, but that wheresoever the goods may be shipped the seller will either pay freight to the indicated point, or, if the goods are not shipped there, will deduct or permit the purchaser to deduct from the fixed price an amount equivalent to the freight on such a shipment to the point indicated. United States v. Andrews, 207 U. S. 229, 28 Sup. Ct. 100, 52 L. Ed. 185; Neimeyer Lumber Co. v. Burlington R. R. Co., 54 Neb. 321, 74 N. W. 670, 40 L. R. A. 534; Hobart v. Littlefield, 13 R. I. 341; Dannemiller v. Kirkpatrick, 201 Pa. 218, 50 Atl. 928; 23 R. C. L, p. 1339.

[4] The law is also clear that, if in a contract for purchase and sale of goods to be shipped to a given point nothing is stated as to the place of delivery, the delivery to the buyer is complete when it is made to the common carrier at the place where the seller produces them or has them for sale. Delaware, etc., Ry. Co. v. United States, 231 U. S. 363, 34 Sup. Ct. 65, 58 L. Ed. 269; United States v. Andrews, 207 U. S. 229, 28 Sup. Ct. 100, 52 L. Ed. 185; Diversy v. Kellogg, 44 Ill. 114, 92 Am. Dec. 154; Kelsea v. Ramsey, etc., Co., 55 N. J. Law, 320, 26 Atl. 907, 22 L. R. A. 415; Templeton v. Equitable Mfg. Co., 79 Ark. 456, 96 S. W. 188, 116 Am. St. Rep. 88. If, therefore, the contract contains nothing as to delivery, the law would include as part of the contract that the delivery of this flour was to be to the common carrier at Pond Creek, Okl., and that this would be delivery to the buyer. Cases supra. As indicated, had this contract, in place of "* * * basis Chicago," employed the term "f. o. b. Chicago," this would not have changed the place of delivery, which would still have remained Oklahoma, and from the stipulated purchase price there would, no matter where the flour was shipped, be deducted an amount sufficient to have paid the freight from Pond Creek to Chicago.

[5] In the correspondence there were no directions for shipment, but it was distinctly provided that shipping directions should from time to time be given by the buyer to the seller. This would indicate that no particular place of shipment was contemplated. The buyer was a flour broker, and the correspondence showed that he had customers both in and out of Chicago. But, apart from correspondence other than that which has been set forth in the statement of facts, the very

fact that shipping directions were by the contract itself from time to time to be furnished by the buyer would indicate that there was no definiteness or certainty as to where the flour would from time to time be sent, and this militates strongly against the contention that the words in question indicate an agreement on the part of the parties that the delivery of all this flour would be at Chicago.

In view of this part of the contract, and of the generally accepted significance of "f. o. b." and similar terms when used in connection with price alone, we incline to the view that the contract itself indicates that the word "basis" thus used, bears upon the price only, and would not any more than "f. o. b." and similar terms used in connection with price only, indicate that thereby was imported into the contract an undertaking by the seller to actually deliver all this flour at the place so stated. Used in connection with price, it is fair to conclude that by the words "basis Chicago" the parties intended that the price fixed was on the foundational principle or hypothesis that the flour was at Chicago; not that it was physically to be transported there, but that the price fixed should be adjusted accordingly. This being in our judgment the fair interpretation to be given the words, it would follow that this should be accepted as their contract meaning, unless either the law has given them a different meaning, or there is in the trade a generally prevailing and well-known custom or practice to regard this expression in a contract as an undertaking on the part of a seller of such merchandise to actually deliver it at the indicated place.

[6] As has been pointed out, we find nothing in the law which indicates such a construction. Some evidence was introduced on both sides on the subject of what the contract means. Defendant in error, who lives at Chicago, and who did not assume to have any knowledge of trade customs and practices at Chicago or elsewhere, stated that these words in the contract meant delivery by the seller at Chicago. But he cannot affect the contract by his own statement of what the contract means. If these words, as certain others in the contract, were code words, he might testify as to their prearranged or agreed meaning. But it is not pretended that these were code words. The telegraphic messages did employ some code words, but there is no dispute that the decoded messages, as above stated, are correct, and we must accept them as such. The words "basis Chicago" are not translations or interpretations of code words, but appear in the original correspondence. He says that the words of the message mean that the seller was to deliver "f. o. b." cars at Chicago. He gives to the word "basis," not only the meaning of "f. o. b.," but attaches delivery as a further meaning, whereas the correspondence gives the price "basis Chicago" without any reference to delivery. But even his testimony is not in itself all consistent with such meaning. For instance, on cross-examination he was asked: "Basis Chicago. Does that not mean that the mill will pay the purchaser, you, or allow you on your purchase an amount of money equal to the freight between Pond Creek and Chicago?" and he replied, "It could; Yes, sir." No other witness testified in support of the contention of defendant in error in this respect.

[7] On behalf of plaintiff in error its president testified that he was familiar with trade terms and usage in Oklahoma and Kansas, and that the words "basis Chicago" meant delivery to the buyer at Pond Creek, with deduction from the agreed price of the freight rate to Chicago, regardless of the place to which the goods were actually shipped. Another witness, qualifying in the same manner, testified to same effect. There were offered depositions of several witnesses from Oklahoma and Kansas, who, after qualifying, were asked the meaning in the trade in Oklahoma and Kansas of the words in question. Objection to their testimony was sustained, but no offer appearing as to what was expected to be proved by them, we cannot say whether the error, if any there was, in the exclusion of these depositions, was substantial.

[8] But none of the evidence on the subject of trade custom, either that which was received, or in the qualifying questions in the depositions, would indicate that any of these witnesses knew of, or that there was extant any general trade custom or practice giving a special meaning to those words, so widely and generally prevailing and recognized that both parties to this contract will be presumed to have dealt in reference to it; neither did it tend to show that there was such a local custom of which both parties to the contract had actual knowledge. Trade custom evidence cannot aid in the interpretation of a contract, unless it meets one of these requirements. Smith v. Nat. Bank, etc. (C. C.) 191 Fed. 226; New Roads, etc., Mfg. Co., 154 Fed. 296, 83 C. C. A. 1; Chilberg v. Lyng, 128 Fed. 899, 63 C. C. A. 451; Rauth v. Warehouse Co., 158 Cal. 54, 109 Pac. 839; Taylor v. Union Sawmill Co., 105 Ark. 518, 152 S. W. 150.

[9] This being so, the natural import of the contract itself, as above pointed out, has not been so far qualified by this evidence as to warrant the conclusion that the contract was for delivery of the flour elsewhere than at Pond Creek; and in this state of the record the place of performance of the contract would be regarded as Oklahoma, and the right of action there accrued, and, the action being there barred after five years, the Illinois statute will give effect to this limitation, and bar it in Illinois.

The judgment of the District Court is reversed, and the cause remanded for a new trial.