# MINNEAPOLIS GAS LIGHT COMPANY *v.* KERR MURRAY MANUFACTURING COMPANY.

## APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MINNESOTA.

Argued May 9, 1887. — Decided May 27, 1887.

From the evidence in this case the court is satisfied that the verbal contract which forms the subject of the controversy did not fix any time for the completion of the work, and that the work was completed within a reasonable time; and it affirms the decree of the court below.

IN equity to enforce a mechanics' lien. Decree for the complainant. The respondent appealed. The case is stated in the opinion of the court.

*Mr. Anson B. Jackson* for appellant.  *Mr. P. M. Babcock* was with him on the brief.

*Mr. George C. Squires* for appellee.

Mr. Justice Matthews delivered the opinion of the court.

This is a bill in equity filed by the appellee, who was complainant below, a corporation of Indiana, and a citizen of that state, for the purpose of enforcing a mechanics' lien under the laws of Minnesota for the price and value of a certain gasholder, alleged to have been constructed and erected by it upon the premises of the appellant.

The bill avers that on or about the 19th day of February, 1881, at the instance and request of the defendant, the plaintiff erected and constructed for the defendant one telescopic gas-holder, at the city of Minneapolis, Minnesota, at the agreed price of $9070, and that said gas-holder was in all things manufactured, put up, and erected in a good, substantial, and workmanlike manner, and was reasonably worth said sum of $9070; that the defendant also agreed to pay the plaintiff the expense of labor and material expended by the plaintiff in erecting the scaffolding for the construction of said gas-holder, and that said cost was the sum of $138.25, and that said gas-holder was erected upon certain described real estate belonging to defendant; that the defendant has paid on account of the construction of said gas-holder and cost of said scaffolding the sum of $3792.74, and no more, and demands judgment against the defendant for the sum of $5415.51, and that such judgment may be decreed to be a lien upon the said gas-holder and the lands upon which the same is situated.

The answer admits that the contract price of said gas-holder was the sum of $9070; denies that the defendant agreed to pay for such scaffolding, and denies that said gas-holder was worth the sum of $9070, and avers that the same was of no greater value than the sum of $4070; avers that the defendant has paid the plaintiff on account of said gas-holder, in cash, the sum of $4953.84; that the defendant delivered the plaintiff

coke on account of said gas-holder of the value of $1440.46; denies that said gas-holder was erected upon the lands of the defendant, and avers that the same is personal property, and avers that the same was erected and constructed under an express contract, by the terms of which said gas-holder was to be constructed in exact accordance with certain plans and specifications which form a part of said contract; avers that said gas-holder was not constructed according to said contract or said plans and specifications, or in a good and workmanlike manner; avers that by reason of the same not having been constructed according to said contract, plans, and specifications, the same has never been fit for the purpose for which it was built, and has never worked in a manner contemplated by said contract, and has always been an imperfect holder; avers that the difference in value between said holder as constructed and what it would have been if constructed in accordance with said contract is the sum of $5000; avers that by the terms of said contract it was expressly agreed that the plaintiff should have the iron and other material necessary to build, construct, and fully complete said holder in the city of Minneapolis within sixty days after being notified by the defendant to produce the same, and to fully complete said gas-holder on or before the 15th day of November, 1880.

That the defendant notified the plaintiff on or about the 1st day of July, 1880, that it was ready for it to ship said material, and that the defendant, at great cost, erected and fully completed the tank and building, in which said gas-holder was to be placed, on the 1st day of September, 1880, so far as the defendant had agreed to construct the same, but that the plaintiff, disregarding its contract, did not ship to and produce said material at the city of Minneapolis until the winter of 1880 and 1881, and did not pretend to have completed said holder until the 19th day of February, 1881, and that the defendant has never consented to or waived the breach of said contract, as above alleged; avers that between the 15th day of November, 1880, and the 19th day of February, 1881, the defendant was engaged in the business of manufacturing, furnishing, and selling gas to the city of Min-

neapolis and the citizens thereof, and that, had the plaintiff constructed and completed said gas-holder on or before said 15th day of November, 1880, the defendant would have made a large amount of profit upon the gas it could and would have manufactured, furnished, and sold between said 15th day of November, 1880, and the 19th day of February, 1881, to wit, the sum of $6757.89, and that, by reason of said plaintiff not completing said gas-holder within the time specified in the contract, the defendant was deprived of such profit and was thereby directly damaged in the sum of $6757.89, and demands judgment against the plaintiff for the sum of $9082.19, with interest thereon since the 19th day of February, 1881.

The replication denies all the averments of the answer.

On final hearing the court below found the facts to be as follows:

" On May 28, 1880, the complainant concluded a verbal contract with the defendant for the construction and completion, ready for use, of a telescopic gas-holder at Minneapolis, according to certain written specifications furnished by the complainant. The defendant was to notify the complainant when to purchase the sheet-iron to be used in manufacturing the holder, and was to have the benefit of any fluctuation in the price of the iron between the date of the contract and the day when notice was given. No time was fixed when the gas-holder should be completed ready for use, though the defendant was anxious it should be ready by November 1, 1880, or in the early fall. The contract price was $9070, and the holder was completed and accepted about February 19, 1881, and has been in part paid for. It is not constructed of the material required by the specifications, and does not fulfil in every respect the requirements of the contract.

" The complainant, by the terms of the contract, was required to erect the gas-holder at Minneapolis and complete it ready for use, and this necessitated scaffolding as the work progressed. Although there is a conflict of testimony about furnishing the scaffolding, I am of the opinion that the complainant waived the clause in the original specifications, which require ' the gas company to furnish the necessary scaffolding,

&c.' The iron used in the manufacture of the holder is not of the kind and quality called for in the specifications, and the difference in price is three-quarters of a cent per pound. The complainant did not furnish guard-rails and braces, as required, which were worth about $50, and has not paid for stoves it used during the construction of the holder, which were purchased by the defendant at the price of $61.30. It would also require an expenditure of $10 to properly adjust the holder, which slightly tipped. The defendant has paid on account of construction $3792.74, to which complainant concedes in addition a credit of $894."

A decree was rendered in favor of the complainant for $3586.96, with interest from February 19, 1881, being for the amount of the contract price, less deductions on account of payments and the allowances mentioned.

In opposition to the conclusions of the Circuit Court, the appellant now insists:

1st. That, by the terms of the contract between the parties, the gas-holder was to have been finished and in place on or before the 15th of November, 1880.

2d. That, on account of the delay between that date and February 19, 1881, when the work was completed, the appellant was entitled to the profit it would have made on the manufacture and sale of gas during that interval, amounting, as is claimed, to the sum of $6757.89. The rule for the ascertainment of these profits, as stated and claimed by counsel for the appellant, is as follows:

" Given a fixed number of pipes of given dimensions for conducting the illuminating fluid from a holder of ample storage capacity to a given number of consumers, who desire and are ready to pay for all the gas which the standard pressure can supply during certain hours, and it becomes a mere matter of mathematics to ascertain the precise number of thousand feet which would be thus supplied and sold. It is equally a matter of arithmetic to ascertain the number of feet supplied through the same pipes, with one-half or one-third the proper pressure. And the difference multiplied by the net profit per thousand feet gives the precise amount lost by the loss of pressure and storage capacity."

It was in testimony on the part of the appellant, that the gas cost for its manufacture $1.50 per 1000 feet, and that the company obtained from its customers $3.50 per 1000 feet, making a profit of $2.00 on every 1000 feet. The assumption was that the whole amount of gas which could have been made by the use of the new gas-holder during the period of delay, by the increased pressure, would have been forced through the pipes into consumption, without addition to the number of consumers, and that it would have amounted to the sum mentioned.

3d. That a much larger sum than $675, being at the rate of three-fourths of a cent per pound on the quantity of iron used, should have been allowed for the difference in value between the gas-holder as constructed, and its value if it had been constructed according to the contract; the claim being, under this head, that the contract called for annealed iron, whereas that actually furnished was common iron, and not suitable for the purpose.

We have carefully examined and weighed all the evidence in the case bearing on the facts in dispute. We are clearly of opinion that the contract as made did not fix any time for the completion of the work. On the contrary, it was left indefinite at the time of the making of the contract at the request of the appellant itself, who desired to postpone the time for ordering the iron as long as possible, so that it might get the benefit of any fluctuation in the price. After the final order was given, it is true that the appellant endeavored to hasten the period for the final completion of the work; but there was no subsequent agreement fixing any precise date, and its actual completion, which took place on February 19, 1881, we find to have been within a reasonable time. As, therefore, there was no delay beyond the time fixed for its completion by the proper construction of the terms of the agreement, we are relieved from the necessity of considering the question of the alleged loss of profits.

An allowance was made by the Circuit Court in the decree of $675 as a difference in value between the gas-holder as furnished, and as required by the contract, on account of inferi-

ority in the quality of the material used and of the workmanship. We are satisfied, from an examination of the testimony, that this allowance ought not to be increased. There is no sufficient proof that the iron used was not annealed iron.

*The decree of the Circuit Court is, therefore, affirmed.*