# BIGELOW, Plff.,

## v.

# PORTO RICO PLANTERS COMPANY, Dft.

---

San Juan, Law, No. 1050.

ON DEMURRER AS TO FORM OF CONTRACTS.

Maturity of Notes—Presumption.

1. A complaint is not demurrable for not stating the maturity of notes sued on. The law will presume that they are payable in a reasonable time.

Bigelow v. Porto Rico Planters Co.

Note—Venue.

2. A complaint under the Porto Rican Code is not uncertain because it does not state when and where the contract is entered into. A contract for the payment of money is transitory in its nature, and, no matter where entered into, is enforceable in a court of proper jurisdiction.

Pleading—Necessary Allegations.

3. The only allegations necessary in pleadings under the Porto Rican practice are those setting out the essential terms of the contract. Alleging the date of the contract is not essential at the common law. Time is important only in connection with the statute of limitation, and that can be raised by plea. The same is true in Porto Rico.

Contract—Exceeding $300.

4. Under § 1247 of the Civil Code, ¶ 6, not previously described, a contract exceeding $300 must be reduced to writing; but this is directory as between the parties. All the provisions necessary for a valid contract between parties are consent, definite object, cause, or consideration.

Same—Form of Contract.

5. This rule has come down to the present Code from earlier Spanish Codes and from the Roman law. The form of a contract is not important between the parties, but only where the law requires certain documents to be inscribed in the registry.

Contracts—Systems of Law.

6. Early systems of law are based upon form, but whether under the Roman, civil, or common law, forms have been gradually abandoned, and consent is the basis in most cases.

Contract—Castilian View.

7. In Spain this gradually evolved under the Castilian view which prevailed over the questions of form. The matter of form is rather more important as regards proof of transactions than as to their validity.

Opinion filed January 30, 1915.

*Mr. Francis E. Neagle* for plaintiff.

Bigelow v. Porto Rico Planters Co.

*Mr. Daniel F. Kelley* for demurrer.

HAMILTON, Judge, delivered the following opinion:

Demurrers have been filed to the amended complaint in this case.

1. The first two grounds of demurrer are to the first cause of action set up in the amended complaint, and set out that under the complaint the issue of the promissory notes was subject to further agreement, and that the complaint is ambiguous in not showing how the defendant failed to issue them. The complaint is not subject to demurrer in this respect. It does not show that there was to be any further agreement as to a material fact. If the maturity of the notes is to be considered as material, the law will presume that they were to be payable in a reasonable time. Minneapolis Gaslight Co. v. Kerr Murray Mfg. Co. 122 U. S. 300, 30 L. ed. 1190, 7 Sup. Ct. Rep. 1187. This time must have expired since June 29, 1903.

The demurrer is overruled so far as relates to these grounds.

2. One ground of demurrer to the second cause of action is that it is uncertain as to when and where the contract was entered into. Any human transaction must occur at some time and place, but the Porto Rican Code does not require that the place be set out in an oral contract itself, or in a complaint seeking to enforce the contract. A contract for the payment of money is transitory in its nature, and no matter where entered into is enforceable in a forum having jurisdiction of the parties. Bouvier's Law Dict. s. v. Transitory; Stephen, Pl. 288, 290. There is no difference between the civil and the

VII. Porto Rico—30.

common law in this respect. If there is no jurisdiction, that would be a matter of defense.

3. Under the Porto Rican Code of Civil Procedure there are no niceties of pleading. If a contract, for instance, be enforceable, the only allegations necessary in the pleadings are those which set out the essential terms of the contract. What must be in the complaint is shown by § 103 of the Code of Civil Procedure, to wit:

"The complaint must contain:

"1. The title of the action, the name of the court, and district in which the action is brought, and the names of the parties to the action.

"2. A statement of the facts constituting the cause of action, in ordinary and concise language.

"3. A demand of the relief which the plaintiff claims. If the recovery of money or damages be demanded, the amount thereof must be stated."

At common law every complaint had to set out the time of a material occurrence, but the time alleged need not be the true time, and could be pleaded with a *videlicet*. The only requirement was that the actual date proved must not be later than the time set out in the pleading. Stephen, Pl. 292.

In the common-law states "the general principle is that in declaring on a parol or simple contract the day when the contract is alleged to be made is not material" (9 Cyc. 716), unless it is, or is made, of the essence of the contract, which does not appear in the case at bar. Brown v. Guarantee Trust & S. D. Co. 128 U. S. 403, 32 L. ed. 468, 9 Sup. Ct. Rep. 127. Time would be important only if the contract were barred by the statute of limitation, or prescription, as it is here called.

The complaint alleges that the contract in question was subsequent to January 1, 1903, and if it is barred by any provision of the statute this should be pleaded.

The demurrer, so far as relates to lack of allegation as to time and place, is therefore overruled.

4. A further ground of demurrer is that the contract set out in the complaint is in violation of the second subdivision of paragraph 6 of § 1247 of the Civil Code. The whole of this section is as follows:—

"The following must appear in a public instrument:

"1. Acts and contracts the object of which is the creation, transmission, modification, or extinction of property rights on real property.

"2. Leases of the same property for six or more years, provided they are to prejudice third parties.

"3. Marriage contracts, and the creation and increase of dowries whenever it is intended to enforce them against third parties.

"4. The assignment, repudiation, and renunciation of hereditary rights or of those of the conjugal partnership.

"5. The general power for lawsuits, and the special ones to be presented in suits; the power to administer property and any other, the object of which is an act drafted or which is to be drafted in a public instrument, or which may prejudice a third person.

"6. The assignment of actions or rights arising from an act contained in a public instrument.

"All other contracts, in which the amount of the prestations of one of the two contracting parties exceeds $300, must be reduced to writing, even though it be private."

Bigelow v. Porto Rico Planters Co.

The point here alleged is that, as the contract exceeds $300, it must and ought to be in writing, while the complaint alleges that it was parol.

This involves a discussion of the form of contracts at civil law. The Civil Code of Porto Rico relating to the subject is contained in §§ 1228, 1245, 1246, and 1247, corresponding, identical in form, to articles 1261, 1278, 1279, and 1280 of the Civil Code of Spain. The first of these sections is as follows:

"There is no contract unless the following requisites exist:

"1. The consent of the contracting parties.

"2. The definite object which may be the subject of the contract.

"3. The cause for the obligation which may be established."

The word "cause" in this section is more properly translated "consideration." This, then, sets up the essentials of a contract, and is different from the original project of 1851, which referred also to forms of execution. The capacity of parties added in the Code Napoleon is implied in the Spanish Code.

5. The Civil Code is divided into four books, the first relating to Persons, the second to Property, the third to Conveyances, and the fourth to Obligations. Under the latter head come contracts, and this subject makes up title II. of the book. Section 1228, above quoted, is in chapter II. of the title, and the different sections go on to discuss the elements of consent, object, and consideration, called for in § 1228. Chapter III. of this title relates to the effectiveness of contracts, and under this head are §§ 1245, 1246, and 1247, as follows:

"Section 1245. Contracts shall be binding, whatever may be the form in which they may have been executed, provided the essential conditions required for their validity exist."

Bigelow v. Porto Rico Planters Co.

"Section 1246. Should the law require the execution of an instrument or other special formality in order to make the obligations of a contract binding, the contracting parties may compel each other to comply with said formalities from the moment in which consent and the other requirements necessary for their vadidity have taken place."

Other chapters under this title relate to the interpretation, rescission, and annulling of contracts, but throw no further light upon the subject of requisites and carrying out of contracts.

It will be observed § 1245 provides that contracts shall be binding, whatever may be the form in which they have been executed, provided the essential conditions required for their validity exist, while the last clause of § 1247 says that a contract of the character of the one in suit must be reduced to writing, even though it be private. The demurrer raises the point that the contract in question must therefore be in writing to have any effect, while the plaintiff maintains that, under § 1228, there are present all the requisites of a contract, and that, whatever may be the rule as to third parties, the contract in question is binding between the plaintiff's predecessor and the defendant.

The question goes much further back than this suit. The Spanish law is, to a large extent, based upon the Roman. The Roman or Civil law was originally very formal, and some contracts always required great formality. There was a distinction drawn between *contractus* on the one side and *pactum* on the other. The *pactum* was the consent and agreement of two (1. 3 pr. D. 50, 12), and was contrasted with the formal contract, such as *stipulatio*. The law declared that *ex pacto actio*

Bigelow v. Porto Rico Planters Co.

*non nascitur* (1. 10 C. 2, 3). Much of the development of
the civil law was due to the praetors, and one of the lines they
pursued was equalizing *contractus* and *pactum*. Thus, the
praetor said that he would carry out *pacta* which are entered
into which are not against law and not fraudulent (1. 7 D. 72,
14).

In later days the canon law, with its appeal to conscience,
had the same effect, and declared in almost the same words
*pacta sunt servenda*. Perhaps the freer Teutonic spirit of the
Goths tended in the same direction of preferring substance to
form, and "when the renaissance of Roman law took place and
Spain molded its precepts into the Code of the Partidas, the
formalistic system struggled with the simplicity of the national,
and was conquered by it," as expressed by Manresa in his Com-
mentary on article 1278 of the Spanish Code (§ 1245 of the
Porto Rican Civil Code). What Manresa calls the "spiritual-
istic" as distinguished from the "formalistic" system triumphed
in title XVI. of the ordinance of alcala (A. D. 1386, Delas
Obligaciones), which became Law 1, title 1, Book 10 of the
Novisima Recopilación. While this was and is right in prin-
ciple, there is always the question of proof, and the Code of
Commerce of 1829 showed a complete reaction therein by re-
quiring great formality for many contracts, nullifying others
by article 236, and providing in article 238 that contracts for
a sum exceeding 5,000 reals should be reduced to a public or
private document in order to have legal effect. The present
Code of Commerce, dating from 1885, took telegraph and
other improvements into account in the evidence of contracts.
Similar formality as to civil contracts, other than commercial,
was provided for by the proposed Code of 1851, but this did

Bigelow v. Porto Rico Planters Co.

not go into effect, and the Civil Code actually adopted went back to the ordinance of Alcala, and proceeded upon what Manresa calls the spiritualistic bases. The first instance in the Code in which a public document was required was article 1321 (Porto Rico § 1288) in regard to contracts relating to matrimonial agreements, and the same became true in regard to real estate and mortgages. Article 633 (Porto Rico § 641) and article 1875 (Porto Rico § 1776).

Manresa discusses the subject at length and comes to the conclusion that consent without the concurrence of the formalities does not merely give a right to an action for the fulfilment of these formalities, that is to say, a specific performance of the legal requirements; but that such consent makes an enforceable contract itself as between the parties, except, for instance, where the contract relates to objects which require authentic documents to secure inscription in the registry. Manresa, commenting on article 1279 (Porto Rico § 1246), says that these provisions "in no way destroy the binding force of contracts entered into by the parties, whatever may be the form in which they are executed, nor does this article in the least destroy their full effectiveness when the parties perform them, even before reducing to a public document those contracts for which the law exacts this requirement, there being created in this way legal rights which cannot fail to prejudice third persons not parties to the contract, unless these third persons derive their right from some title which by its nature is of a higher character, or because this title, being recorded in the registry, may impede the object of the contract with regard to third persons; apart from this the law gives no right to a third person to demand compliance with what is provided in article 1280

(Porto Rico Code 1247). (Decision of 1st of July, 1901.)" The decision of the 11th of May, 1903, established, in effect, that contracts are binding, whatsoever may be the form in which they are executed, provided always there are present the essential requisites for their validity, from which it follows that their effectiveness between the parties depends exclusively on their validity, and not on the extrinsic forms required by the law for certain distinct consequences, and that, therefore, the parties can mutually demand the performance of the obligations entered into. Verbal contracts for rent, for an amount greater than 1,500 pesetas, are therefore binding in spite of what is provided in article 1280 (Porto Rico Code 1247).

6. The propriety of form in regard to the more important kinds of contract has been recognized in many systems of jurisprudence. It is based upon the double feeling that such an important transaction as the transfer of land requires solemnity, and also that it should be evidenced in such a way as to make it publicly known or provable. This seems to lie at the basis of much of primitive thought and law, and survived in the Roman *contractus* as distinguished from the *pactum,* whose enforcement the praetors undertook at first among the non-Romans (peregrini) of the capital. In England the livery of seisin and other ancient forms gave way, upon the diffusion of writing, to written contracts. The statute of 29 Charles II., chapter 3, called "An Act for the Prevention of Frauds and Perjuries," was the crowning legislation on the subject. Its provisions as to the transfer of land and certain contracts which at common law could be made orally have become the basis of all English and American jurisprudence on the subject. Nevertheless, the chancellors followed the path of the Roman

praetors in finding a method for the performance of informal contracts. This is the equitable procedure known as specific performance. It may be conceded, however, that this remedy would not be applicable in such a case as the one at bar. A failure to give notes for a certain amount of money would ordinarily merely result in damages to the equivalent amount, thus presenting a case where the common-law procedure would be adequate, and a court of equity would not interfere. While the form of pleading is different, the same would be true in Porto Rico. This court would act in this matter, if at all, as at law, and not as in equity.

7. The formal provisions which we have been discussing, whatever the meaning of the legislators, have given way to what Manresa calls "the Castilian or spiritualistic view," that, whatever the defects of form in the contract, it shall nevertheless be enforced if the minds of the parties met in agreement. The supreme court of Porto Rico has followed this construction, and in Maisonave v. Maisonave, 13 P. R. R. 254, 261, declares that § 1245 has always been understood to be effective as between the contracting parties.

"The legal provisions which refer to the execution of public instruments for the transfer of the ownership of real property do not vary the nature of such contract, nor do they establish an essential condition thereof, but merely a form in the interest of the public, independent of the will of the contracting parties." Velez v. Camacho, 8 P. R. R. 35, 40; Ascencio v. Alvarez, 10 P. R. R. 102; Abella v. Antunano, 14 P. R. R. 486, 495.

Quoting the supreme court of Spain, that of Porto Rico says: "The effectiveness of contracts does not depend on their

Bigelow v. Porto Rico Planters Co.

external form, but on the concurrence of such circumstances as are necessary to their validity, the parties thereto being bound by them, whatever be the form in which they may have been perfected, and their record in a public or private document, in some cases required by law, is not an essential condition to their existence, but a coercive means allowed the contracting parties to compel each other to the fulfilment thereof." Vázquez v. Medina, 17 P. R. R. 96, 100.

The result, therefore, is that, while a formal contract may be necessary for purposes of binding third parties, as to which the mortgage law plays a large part, it is not always important as between the parties themselves, except that the lack of the prescribed form renders more difficult the proof of the transaction. In the case at bar, therefore, the fact that the notes agreed upon were not executed, and the fact that the agreement for their execution was not in writing, do not destroy in any way the claim of the plaintiff, provided he can prove the agreement which he sets out.

It follows that a demurrer on this ground cannot be sustained, and therefore the demurrer to the second cause of action of the amended complaint is overruled.

It is so ordered.