# ANTONIO COSTA SEMIDEY

## *v.*

# IZQUIERDO ET AL.

San Juan, Equity, No. 997.

SPECIFIC PERFORMANCE.

Specific Performance—Preliminary Injunction.

    1. The test upon a preliminary application is the probable right, and the probable danger to that right unless the court interferes. The court's discretion is regulated by the balance of inconvenience or injury.

Foreign Nation—Jurisdiction of Court.

    2. The court will not pass upon political questions, but will pass upon all questions of fact. Foreign regulations will not be regarded by the court unless they have become a part of the contract.

Contract—Sale or Security.

    3. Unless there is some point at which the supposed purchaser could sue the supposed seller for the goods, the sale is incomplete, and it cannot be said there is a case of probable right on his part subject to danger.

Contract—Broker and Purchaser.

    4. Where brokers, in order to avoid official regulations, take the title to themselves with the understanding that the proposed purchaser shall have the goods upon payment, the form, but not the substance of the contract, is varied, and the brokers will not be permitted to take advantage of the situation.

Preliminary Injunction—Evidence.

    5. The courts are liberal in admitting evidence upon application for preliminary injunction in order to get a clear understanding of the circumstances. Technical rules of evidence will not be regarded if the general result is not affected.

Opinion filed August 20, 1917.

## Statement of Facts.

The bill in this case was filed July 31, 1917, and a temporary restraining order was issued thereon. The bill, which is sworn to, alleges that plaintiff on March 15, 1917, contracted with the defendants for the purchase of 6,000 jute coffee bags at twenty-six and a half pence to be delivered about July, 1917, and on April 27, 1917, paid $3,000 on account of the purchase. The bags arrived in Porto Rico about July 25, but defendants refuse to deliver them, and intend to dispose of said bags otherwise. That unless these jute bags can be secured plaintiff will lose the handling of his coffee crop and will suffer irreparable damage. The answer of August 11, which is sworn to, admits many of the facts, but claims that it was a conditional contract, and denies that the money delivered was in payment. That during the present great war the government has organized what is called the British Textile Commission or Alliance, practically a branch of the said government, which has, among other things, the control of the sale of jute bags, and among other regulations requires as a prior condition to the sale thereof that the purchaser shall be acceptable to the British government, and defendants prior to the alleged sale had given the British government assurance that its dealings would only be with purchasers so approved. That on March 15 a conditional agreement was made for the sale of such bags to plaintiff, but it was expressly provided that the execution of the order was subject to the British government permitting shipment, and that acceptance of the order was dependent upon whether the purchaser was approved by the Textile Alliance. That accordingly defendants placed

Semidey v. Izquierdo.

the order with the firm of Fullerton & Wilson of Dundee, Scotland, subject always to the condition of such approval. That it was discovered that plaintiff was not so acceptable, and it was urged upon him that it would be necessary to secure such approval. That on April 6 the sellers advised defendants that plaintiff did not appear on the approved list, and the British consul advised defendants that there could be no delivery accordingly. That the bags were shipped to Porto Rico consigned to defendants, in the hope that plaintiff would be able to secure such approval, and on July 12 defendants advised plaintiff of the refusal of the British government to permit the sale, and tendered return of the money, which is now again tendered by the answer. That defendants have paid for the bags, and it is necessary, to save themselves from loss, that the bags be sold and disposed of. As exhibits are annexed memorandum of the order from Dundee dated March 15, and a letter of July 12.

The hearing on motion of defendants to dismiss the restraining order and upon a motion of plaintiff for a temporary injunction came to be heard August 14, oral motion of defendants to dismiss for defects in the order being overruled, and letters and other documents and testimony of witnesses introduced on both sides.

It was shown by the evidence that the parties to this transaction had a similar deal in January of this year, in which no trouble from this cause arose. There was in that instance an order for 3,000 bags to the defendants, and it was filled without reference to any approved list. An offer was made by the defendants in February, which is in evidence, but it was not accepted. In these two prior matters nothing had been said

Semidey v. Izquierdo.

about approval of the Textile Alliance, so far as appears in evidence. In the middle of March comes the transaction now in question, and it consisted of a telegram by plaintiff's agent on March 13 that "Izquierdo quotes bags equal to lot sold you . . . Shipment in June or July. . . ." There was a reply on the same day, "Accept price, Izquierdo, for 6,000 bags, am writing you." This seems to have been submitted by Izquierdo to the Dundee firm, who, according to defendants' letter of March 16, cabled, giving particulars and adding "Payable in London by funds which you will deliver to us. Time of opening the credit and subject to the restrictions of the British government and any other contingencies of *force majeure*." Apparently, immediately upon receipt of this plaintiff writes his San Juan agent to explain to Izquierdo that he does not want to appear as importer for fear that "due to certain differences with the French consul the latter may recommend that I be not approved as importer." What the French consul had to do with the matter is not in evidence. There is positive testimony that this point was explained to Izquierdo, although that firm does not remember it. On March 15 was what is called the "vendi" or sale note signed by Izquierdo and plaintiff, as follows:

Dundee, 15th March, 1917.

Order from Antonio Costa Semidey through Sobrinos de Izquierdo & Co. to Fullerton & Wilson, of Dundee, Scotland.

*Shipment:* from Dundee, June/July, but without any guaranty of exact time of shipment (Strikes, fires, accidents, and quarantine excepted).

*Terms:* C. I. F. San Juan, P. R. packing free, not dutied. Payment in London, in cash, against delivery of documents in London.

*War risk insurance charged extra.*

6,000 (seismil) sacos para café, 44 x $27\frac{1}{2}''$ single woven jute bags Calidad No. 248, 3 lbs., sin marca, lisos. Two side seams & hem and mouth. Double flat seam.

The execution of this order is subject to the British government permitting shipment.

*Price:* $26\frac{1}{2}$ d. *(veintiseis y medio peniques por saco).*

Conforme:

[Signed]    Sobrinos de Izquierdo & Co.

San Juan, P. R.,

Vendedor.

Conforme:

[Signed]    Anto. Costa Semidey,

Comprador.

On April 25, plaintiff sent his check for $3,000 to defendants, "which sum guarantees my order to you for 6,000 jute bags. . . . It is also agreed that the declaration of these bags before the Textile Alliance shall be made in your name." This was acknowledged by defendants on April 27, stating that with the $3,000. "we have purchased pounds to be deposited with our brokers in London to meet the payment of the order past." There is a statement that defendants are surprised at the contention of plaintiff that the money remitted is "not to be subject to any liability if for any reason the 6,000 bags pur-

chased from you should not be delivered by you." Izquierdo comments on this that "the circumstances of our having acted in this purchase as mere agents for Messrs. Fullerton & Wilson cannot in any way involve us in any risk that may occur to the bags which you have purchased from them, which war risk you have also covered in accordance with the terms of the bill of sale, which are binding on both parties, and constitute the sole legal basis of the transaction." The next letter from the plaintiff says that "the paragraph of my letter to which you refer with surprise has for sole object to confirm, and not to clear up, a point already spoken of,—that the declaration of these bags would be made by you, and my name should not be mentioned for any purpose; but that in the event that for any circumstance I could not receive said bags, then it is understood that the bond (*fianza*) of $3,000 shall not be liable for anything, with the exception of the war and maritime insurance, the first-named risk is paid by me, the latter by the parties whom you represent." At this time, therefore, it would seem that the understanding of the parties was that the sale was between Fullerton & Wilson and the plaintiff, the defendants being merely brokers in the matter.

Izquierdo on May 2 received a letter dated April 6 from Fullerton & Wilson, stating that as the name of the plaintiff "does not appear on the approved list we must therefore ask you to take the necessary steps immediately so that his name may be put on the approved list with all possible speed, in order that there be no delay in the shipment when the goods get ready." Without waiting for more, defendants on the same day cabled Fullerton & Wilson, "Cancel order Semidey trans-

ferring ourselves," and on the 5th advised plaintiff that they had a letter from Fullerton & Wilson:

". . . whom we represent, notifying us that as a result of the serious obligations they have contracted with the British government, they have been compelled to disclose the name of the ultimate purchaser of the order which we had passed on your behalf; and of course, upon finding that your name did not appear on the list of approved firms for the purchase of jute bags, they have hastened to write us, to advise you to register through the Textile Alliance of New York.

"Now, well as we remember what you have verbally stated to us in that regard, we have cabled on the same day, on the 2d, to Messrs Fullerton & Wilson, to cancel your order and transfer it to us, to which telegram we feel there should be no objection. Of course, upon writing to them by next mail we will be frank again as regards said sale, and will say further: that we are dealing with a faithful friend of the Allied cause. We have received no answer to said cable, and would that this silence be a good omen that our appeal has succeeded, and we would exceedingly regret if they should not despatch said bags to you for the reasons above mentioned. When you come up we will show you everything dealing with this matter. . . ."

The cable of cancelation was acknowledged by Fullerton & Wilson without comment.

The shipment of bags seems to have been made some time in June. The British consul on July 11 notified Izquierdo, upon inquiry, that plaintiff's name was not on the approved list, and next day defendants notified plaintiff that, on account of

Semidey v. Izquierdo.

the consul's letter, it was impossible to deliver the bags, claiming that, "as you are aware, the case was foreseen in the bill of sale relative to this transaction," and saying that they put the money paid at his disposal. They added that they would like to be advised of plaintiff's obtaining registration on the approved list in the near future. On the 14th plaintiff acknowledged this, and wrote that "as I stated to you verbally when I was there, the Honorable the Governor of Porto Rico has already taken up the matter of the approval of my name as importer of bags of jute, and the last I have received is that the approval will come up at any moment. Please take notice." On July 17 the British consul notified the defendants that he had received bills of lading for the twenty bales of jute bags, and asked information for what purpose the bags were intended. And on the 26th the defendants advised plaintiff that the 6,000 bags had arrived by the Brazos, "but as up to this date you have not obtained permission from the English government for us to make the delivery to you, the sum which you had delivered to us on account is at your disposal. Being really sorry for the occurrence," etc. This ends the correspondence in evidence, except letter from plaintiff's counsel to the British consul, asking him to confirm to the defendants the verbal statement that it is immaterial whether Izquierdo keeps the bags on hand or not, so long as they are not delivered to any unapproved person. The form of the bill of lading dated in Glasgow June 18, 1917, for twenty bales of jute bags shows that the shipment was unto "A. M. Patterson, president for the time being of the Textile Alliance, Inc., of New York. Notify Sobrinos de Izquierdo & Company." And the indorsement is:

Semidey v. Izquierdo.

Deliver to the order of the British consul, San Juan, P. R., account of Sobrinos de Izquierdo & Company, San Juan.

[Signed]    Textile Alliance, Inc.

A. M. Patterson, President.

by A. R. Piatt, Atty.

Deliver to the order of Sobrinos de Izquierdo & Company.

[Signed]    C. D. Elphick, British Consul.

(With seal of the British consulate of Porto Rico.)


*Mr. Henry G. Molina* for plaintiff.


*Mr. Chas. Hartzell* for defendants.


HAMILTON, Judge, delivered the following opinion:


1. There is no great dispute as to the facts of the case. The difference is more as to the interpretation of the facts and construction to be placed upon the acts and letters of the parties. The evidence was allowed to take a large range, and technical objections to testimony were not sustained. A verified bill may be used as an affidavit. Kankakee v. American Water Supply Co. 118 C. C. A. 195, 199 Fed. 757, 758. And the same is true of answers. Rebutting affidavits are not generally allowed. Benbow-Brammer Co. v. Simpson Mfg. Co. 132 Fed. 614. Allegations in the bill not denied in the answer are taken as admitted. Young v. Grundy, 6 Cranch, 51, 2 L. ed. 149. Documentary proof can be used. Schermehorn v. L'Espenasse, 2 Dall. 360, 1 L. ed. 415, Fed. Cas. No. 12,454. So much being discretionary in such matters, the court endeavors to get light from all proper quarters. The plaintiff must

Semidey v. Izquierdo.

show that there is no doubt of the wrongful nature of the act, or that his own claims have been acquiesced in, or that injury to himself from a refusal will be very great and to the defendant very slight. Fosters, Fed. Pr. § 294. Upon a preliminary application, all that should as a general rule be required is a case of probable right and the probable danger to that right without the interference of the court, and its discretion should then be regulated by the balance of inconvenience or injury to the one party or the other. High, Inj. § 13; Indianapolis Gas Co. v. Indianapolis, 82 Fed. 245, 246. It is not necessary that there be all the evidence which would be needed to justify a permanent injunction upon final hearing, but it should be denied where the proofs are equally balanced. Foster, Fed. Pr. § 294.

2. This court will of course protect all parties litigating before it to the fullest extent of its jurisdiction. The fact that orders and decrees of the British government are involved makes no difference. That government has no power within the limits of the United States, and all property within those limits will be handled as the rights of the litigants seem to require. There may, of course, arise political questions which make it improper for a court to proceed, as political questions can be solved only by the political branch of the government, that is to say, the President and his advisers. This, however, is not such a case. The plaintiff, resident in Porto Rico, and who has since become an American citizen, ordered certain British goods through Spanish brokers here resident, of a British house in Dundee, Scotland. That house had a right, and no doubt it was its duty, to obey the regulations of the British government. That government could place any restrictions upon the delivery

of the goods that it saw proper, whether for purposes of prosecuting the present great war or otherwise. These regulations would control up to the time that the property came within American jurisdiction, and then they would cease unless they had become a part of the contract of sale. This court will look at them only in that light, and see whether they have been incorporated into the contract now sought to be enforced. So far as the goods themselves are concerned, they are subject to the disposition of this court.

3. There is some difficulty getting at the exact contract, because the defendants seem to have been the agent of the Scotch sellers, and the plaintiff acted sometimes through an agent he had at San Juan, and sometimes conferred with the defendants in person at San Juan. There are two possible views of the result. In the first place, the plaintiff may have bought the goods outright and they have been shipped to San Juan as his property, in such case defendants acting as his agent; or they may have been shipped by the firm of Fullerton & Wilson at Dundee to defendants as their agents in San Juan, in which case the goods would still remain the property either of the Scotch sellers or of the defendants. If, under the first supposition, the goods came to San Juan as the property of the plaintiff, defendants would have no right to retain them, no matter what the effect might be upon themselves. In the other case the title never passed from the Scotch sellers to the plaintiff, and remains either the property of the Scotch firm or of the defendants, subject to plaintiff's complying with certain conditions, which have not yet been complied with. Which theory do the facts justify?

It seems to be admitted by the parties, and if not it is judi-

Semidey v. Izquierdo.

·cially known by the court, that the British government during this war permits the sale of British goods only to persons approved by its agents, the so-called Textile Alliance; but it is not so far proved in this case what the regulations of this alliance are or when they went into effect.

It is not necessary upon application for a preliminary injunction, as in the case at bar, to prove the whole case. It is doubtless true that there are other matters yet to be shown in evidence here. The issue of an interlocutory injunction is never a matter of right, but rests in the sound discretion of the court. Foster, Fed. Pr. § 294. Looking at the matter as a case of probable right and probable danger, it seems to be a fair conclusion from the evidence so far, not that the plaintiff was trying to get the defendants to deceive the British government by using defendants' name, or that the defendants were doing so, but that the parties never contemplated what has developed to be the detailed regulations in regard to the Textile Alliance one way or the other. The contract, being with the defendants as agent, and therefore really between the plaintiff and Fullerton & Wilson, depends upon the sale note made out by or for Fullerton & Wilson, and shown to the plaintiff before any money was paid. This says that "execution of this order is subject to the British government permitting shipment," but this was signed by plaintiff and defendants later. The cable from the principals in Dundee was that the trade was "subject to the restrictions of the British government and any other restrictions of *force majeure*," which is duly contained in the letter of defendants to plaintiff of that date. The facts do not seem to justify the conclusion that there was an out and out sale, subject at most to restrictions as to shipment being

permitted. Even if that view was correct, the shipment was not until June, and before that time all the points had developed in the case. The parties may not have known the regulation as to delivery through the British consulate, but it cannot be said that the shipment was complete until either the goods arrived or the bill of lading was delivered, one or both. There would seem to be no point of time at which the plaintiff could have sued the defendants or their principals for possession of the goods.

It is argued that the goods must belong to the plaintiff because he gave the order, paid substantially all the price, and the goods came across the seas on that order. The payment, however, is not conclusive. The delivery of the check is expressly said to be as security, and it is not said to be in payment. At most it would amount to a payment in advance subject to nonexecution of the sale due to causes over which the parties had no control.

This view of course is not conclusive. It is impossible to say what further evidence may be developed in the case and which may change the outlook; but as the matter stands it cannot be said that it is a case of probable right which is subject to probable danger, as it is expressed in Indianapolis Gas Co. v. Indianapolis, 82 Fed. 245, 246.

4. This, however, does not exhaust the case. While on the facts at present before the court it would seem that the plaintiff could not compel Fullerton & Wilson specifically to perform the contract because the contract was conditional upon plaintiff's being upon the approved list, still a question arises as between the plaintiff and the brokers who acted both for Fullerton & Wilson and for the plaintiff. As the matter stands now the

jute bags are in the warehouse of the defendants, and if nothing is done they will be sold to the irreparable damage of the plaintiff and to the financial advantage of the agents whom he employed and to whom he paid the money necessary to bring the goods here. If the contract of the plaintiff is at an end or never went into effect, this cannot be helped. Is this the fact? Fullerton & Wilson may be eliminated from consideration, for they make no claim to the goods, and have always been more than willing to fill the order if the plaintiff was in condition to receive the goods. The question is as between the plaintiff, who put up the money, whether in payment or security, by virtue of which the goods were brought here, and the defendants, who brought them here under that order. The sale was conditional upon the plaintiff's getting on the approved list. When the goods arrived he was not on such list. There might be strong reason to hold that that ended the contract, and all that was needed was for the parties to be restored to their original condition; that is, the defendants should put the plaintiff back in possession of his money. This defendants offered to do, but they have never actually done it. It is idle to talk about a tender when the money is retained. Bouvier's Law Dict. s. v. *Tender*. See also P. R. Code Civ. Proc. § 336. A tender for legal purposes consists in the payment of money into court after it has been as a matter of fact tendered in cash to the party in interest. There has been no tender in cash and no payment into court, but a letter stating that the money was held at the disposition of the plaintiff. The contract was therefore not technically at an end, and the acts of the parties show that it was not considered to be at an end. Its form was changed, for the defendants on their own responsibility can-

celed the original order and had the goods sent to themselves as
owners, and not as agents; but the facts fairly indicate that the
transaction was carried out with the plaintiff's money, and
after that time the defendants wrote and otherwise told the
plaintiff that, if he got on the approved list, he could have the
goods.    In other words, while the form of the contract was
changed, the substance was not; the plaintiff was still to have
the goods upon a certain condition, which he claims is in process
of realization.

The law undoubtedly is that the court will not grant an in-
junction where the relief depends upon a contingency not yet
determined.    22 Cyc. 755.    The court can enforce only actual
contracts.    But there seems to be good reason in this case to
hold that the parties themselves made the condition of getting
on the approved list a part of the contract itself, and did not
fix any time within which it should be done.    This being so,
it can hardly be said that time is of the essence of the contract,
except what may be implied from bags necessary for a coffee
crop, which is handled in the fall of the year.    Cheney v.
Libby, 134 U. S. 68, 33 L. ed. 818, 10 Sup. Ct. Rep. 498.
There has been no notification by either principal or agent that
the plaintiff must get on the approved list by a certain date
or the contract is at an end.    The general rule is that where
no time is named a reasonable time will be implied.    Minneapo-
lis Gaslight Co. v. Kerr-Murray Mfg. Co. 122 U. S. 300, 30
L. ed. 1190, 7 Sup. Ct. Rep. 1187.    Has a reasonable time
already elapsed in this case ?

This is not a case in which *inter arma silent leges,* but it
is a case in which the usual means of enforcing law are subject
to delay.    It is in evidence that the plaintiff is now an Ameri-

Semidey v. Izquierdo.

can citizen and is taking steps to have himself approved so far as necessary for the purposes of this purchase; and as between the governments of the United States and Great Britain it cannot be said that an interval of a few months is unreasonable, considering the multitude of other matters, military and otherwise, which have to be attended to. It is quite true that the defendants are entitled to consideration; but so far as appears they are not injured except as to storage charges, unless it should be held that they are not properly in possession of the money paid by the plaintiff and must hold that as a separate fund. This does not appear to be so, but likewise at most is only a matter of interest. It is not shown that the British regulations which are a part of this contract forbid the defendants from holding the goods subject to contracts; and moreover if they did there could be no sense in which the defendants personally could be said to hold the goods contrary to law if they are holding them under the order of court.

5. Many objections were made to evidence. They were generally overruled so as to get the facts, even when not deemed essential, before the court, for better understanding of the circumstances and of the conditions under which the parties were contracting. On examination it does not seem that there was any error in this. Even hearsay evidence may be received upon applications for preliminary injunction. Casey v. Cincinnati Typographical Union, 12 L.R.A. 193, 45 Fed. 135, 147. In the case at bar, however, even elminating all doubtful matters, the general result will not be affected. It does not seem necessary, therefore, to examine in detail the objections which were made, and the provisional rulings are now confirmed.

It would seem, therefore, that the motion for preliminary

X. Porto Rico.—9.

Semidey v. Izquierdo.

injunction should be granted to the extent of requiring the defendants to hold the goods in question up to November 10, 1917, upon the plaintiff's entering into bond to protect them against all damages from any source growing out of this transaction in the sum of $4,000. This would, amongst other things, cover the value of the goods, storage charges, and interest during the running of this injunction. But if the plaintiff does not by that date succeed in getting on the approved list or otherwise becoming a proper person to receive jute bags produced in the British Empire, the injunction will *ipso facto* be dissolved. This will probably, on the one hand, enable the plaintiff, if he becomes entitled, to receive the bags in time for the coffee crop; and, on the other hand, if the plaintiff is not so entitled, will enable the defendants to sell the bags to someone else for the same crop.

It is so ordered.